**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

VICTORIA PICKETT,

        Plaintiff,

v.                                                       ACTION NO. 2:11cv251

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking judicial review of the final administrative decision of Defendant, the Commissioner of Social Security ("Commissioner" or "Defendant"), denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 ("Act").

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. This Court recommends that the decision of the Commissioner be REVERSED and the case be REMANDED for further administrative proceedings, that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED in part.

## **I. PROCEDURAL BACKGROUND**

The plaintiff, Victoria Pickett ("Plaintiff"), filed an application for DIB on March 28, 2008, alleging she had been disabled since June 16, 2006. R. 15.[1] The application alleged disability due to nerve damage, diabetes, numbness in both legs, high blood pressure, and high cholesterol. R. 81, 93. Plaintiff later amended her alleged disability onset date to September 15, 2006. R. 28-29. The Commissioner denied her application, both initially on June 13, 2008 (R. 61-65) and upon reconsideration on December 12, 2008. R. 70-75.

At Plaintiff's request, a hearing before an Administrative Law Judge ("ALJ") (R. 76-77) took place on January 5, 2010, during which both Plaintiff and a vocational expert testified. R. 24-44. At this hearing, Plaintiff was represented by Robert Gillikin, Esq. ("Gillikin"). R. 24. On January 11, 2010, the ALJ issued a written decision denying Plaintiff's claim, stating that Plaintiff was not disabled under the Act. R. 12-23. On March 8, 2011, the Appeals Council denied Plaintiff's request to review the ALJ's decision. R. 1-5.

Having exhausted all administrative remedies, Plaintiff filed a complaint with this Court on May 6, 2011, in accordance with 42 U.S.C. § 405(g). ECF No. 1. Defendant filed an Answer to the Complaint on July 8, 2011. ECF No. 4. On July 15, 2011, an Order was entered directing parties to file Motions for Summary Judgment. ECF No. 7. Plaintiff's Motion for Summary Judgment was submitted on August 12, 2011. ECF No. 8. Defendant's Motion for Summary Judgment was filed on September 13, 2011. ECF No. 11. On September 27, 2011, Plaintiff filed her Reply to Defendant's Motion for Summary Judgment. ECF No. 13.

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

## II. FACTUAL BACKGROUND

Plaintiff is fifty-two years of age and has a high school education. R. 22. Plaintiff performed semi-skilled work in various jobs, including work as a bus driver, truck driver, and machine operator. R. 99. Plaintiff has not worked since June 2006, when she suffered a fall in a grocery store, injuring her right knee. R. 31. Plaintiff insists that she cannot return to work as a driver due to the leg numbness and the drowsiness she experiences when taking her chronic pain medication. R 48-49. Despite her inability to work, Plaintiff acquired sufficient earnings of coverage to remain insured through September 30, 2008, her date last insured ("DLI"). R. 15.

Plaintiff has an extensive history of back pain, dating back to 1999, and underwent two lumbar surgeries for the pain. R. 145. Despite the surgeries, Plaintiff continued to have back pain. R. 145. Plaintiff also has suffered from hypertension, high cholesterol, and diabetes prior to the date of the alleged onset of disability. R. 235. Plaintiff is obese, with a body mass index exceeding thirty percent. R. 19.

On June 24, 2006, after Plaintiff's fall, she visited orthopedic specialist John J. Schaffer, M.D. ("Schaffer") at the referral of Plaintiff's primary care physician, Gary Snider, M.D. ("Snider") for complaints of severe back and bilateral leg pain. R. 20, 147. Schaffer indicated that Plaintiff was heavier than an ideal weight, but demonstrated a good range of motion in her right hip, knee, and ankle. R. 147. He further noted an absence of neurological or vascular abnormalities, but continued that Plaintiff was manifesting signs of a knee injury. Id. Schaffer told her to stop driving a bus, which was part of Plaintiff's job, and recommended an MRI to rule out a possible meniscal injury. Id. On July 19, 2006, an MRI was performed on Plaintiff's right knee. R. 179. The results of the MRI showed no signs of meniscal or ligamentous tears, but did

reveal a small popliteal cyst and a widespread grade IV chonodomalacia patella and significant patellofemoral osteoarthritis. R. 180.

On July 31, 2006, Plaintiff visited Winifred D. Bragg, M.D. ("Bragg"), pain management specialist, also by Snider's referral, for Plaintiff's back and leg pain. R. 145. Bragg indicated that Plaintiff moved around the examination room very slowly and had an antalgic gait favoring the lower extremity. Bragg further indicated that Plaintiff must extend her right leg when seated and has a very stiff lumbar spine with forward flexion to sixty degrees. R. 146. Bragg recommended physical therapy to attempt to mobilize Plaintiff and decrease her acute back pain. Id. On August 15, 2006, Plaintiff visited physical therapist Teri Bell, MSPT ("Bell"). R. 163. Bell indicated that Plaintiff demonstrated a forward-flexed posture and had tenderness to touch of the bilateral lumbar spine muscles. Id. Bell reported that Plaintiff had a "fair rehabilitation potential" and was to be seen two times a week for three weeks for lumbar therapeutic exercises. Id.

On September 15, 2006, Plaintiff visited Bragg for a follow-up appointment. Bragg noted Plaintiff showed no signs of progress from the physical therapy. R. 158-59. On this day, Plaintiff described her pain as "excruciating," indicating she had numbness in both legs. Id. Bragg prescribed Tylox for the pain. Id.

At another follow-up appointment with Bragg on October 13, 2006, Bragg noted that Plaintiff continued to experience pain while walking, though the pain was improving. R. 157. Bragg reported that Plaintiff experienced failed back syndrome and neuropathic pain. Id. Bragg prescribed Neurontin for the neuropathic pain and indicated that Plaintiff should continue to use Flexeril and Tylox for her muscle pain. Id. On December 15, 2006, Plaintiff returned to Bragg and was prescribed opioid analgesics for her chronic pain. R. 154. Bragg reviewed an opioid

agreement with Plaintiff, outlining the proper usage and dosage of the opioids. R. 155. Plaintiff signed the agreement, acknowledging that if she were not compliant, Bragg would no longer prescribe the analgesics. Id. On December 20, 2006, Jim Dover, O.D. ("Dover") performed a comprehensive diabetic eye exam on Plaintiff. R. 149. Dover noted there were no signs of diabetic retinopathy or any other indications of ocular involvement due to the diabetes and would follow-up with Plaintiff in twelve months. Id.

On May 18, 2007, Plaintiff again saw Bragg, who indicated Plaintiff was doing well on her medications, was able to manage the pain on less of the opioids and seemed to be improving. R. 151-52.  On August 14, 2007, Bragg discharged Plaintiff because she no longer accepted Plaintiff's insurance. R. 150.  On October 22, 2007, Joann W. Dervay, M.D. ("Dervay"), a pain management specialist, assumed treatment responsibilities. R. 175-77. Although a right knee MRI evidenced no meniscal tearing, Dervay noted marked grade IV chondromalacia patella and femoral chondromalacia at the patellofemoral joint, as well as significant patellofemoral osteoarthritis. Id.  Dervay put Plaintiff on a fentanyl patch to help with the pain. R. 177. Plaintiff underwent a series of three Synvisc injections to lubricate her knee, and Dervay noted that Plaintiff tolerated the injections well. R 178. At a follow-up appointment on November 2, 2007, Dervay prescribed Lyrica to Plaintiff because Plaintiff complained that the Neurontin was no longer helping with the pain. R. 172.

On November 16, 2007, Plaintiff told Dervay she could walk for about twenty minutes, but stopped herself after walking a mile because of the onset of numbness and tingling. R. 171. Dervay renewed Plaintiff's prescription for Lyrica to help with these symptoms. Id. On February 15, 2008, Dervay indicated that Plaintiff was doing well on the combination of Lyrica and the

5

fentanyl patch and "was able to do more and had longer tolerance for activity." R. 168. On February 26, 2008, Dervay discharged Plaintiff from pain management because Plaintiff violated her opioid contract, as evidenced by a positive oxycodone result from a urine screen. R. 167.

Following Plaintiff's discharge, primary care physician Snider assumed Plaintiff's treatment and medication management. Since August 2008, Plaintiff has sporadically complained of back pain, but visited Snider primarily for her other conditions. Snider examined Plaintiff every three months, monitoring her blood sugar levels for her diabetes and lipid profile for her high cholesterol, adjusting her medications when necessary. R. 228-52. On August 18, 2009, Plaintiff visited Snider for severe left back pain. R. 229. Snider observed tenderness in her left posterior rib cage. On examination, Snider observed essentially normal physical examination findings and noted Plaintiff's conditions were well-managed with medication and periodic reviews. R. 228.

On June 13, 2008, physician Michael Cole, D.O. ("Cole") reviewed Plaintiff's medical records on behalf of Disability Determination Services ("DDS"). R. 45-59. After examining Plaintiff's record, Cole determined that Plaintiff did not have the Residual Functional Capacity ("RFC") to perform her past relevant work. R. 54. Based on the seven strength factors of the physical Cole further indicated that Plaintiff demonstrated a maximum sustained capability to perform sedentary work only. Id. Cole noted that the medical and non-medical evidence in Plaintiff's file was inconsistent with her statements, and, based on these discrepancies, he found her statements to be only partially credible. R. 51.

Cole further found that, while Plaintiff's records show a history of back problems and diabetes, the evidence shows no severe muscle weakness or severe inability to move about. R.

57. Cole continued that the evidence fails to show how the diabetes has affected Plaintiff's vital organs. Id. Cole concluded that, although Plaintiff's condition limited her from performing strenuous work, like heavy lifting or extensive walking, it does not prevent her from performing all work activities. Id. Plaintiff's DLI was September 30, 2008, three months and twenty-four days shy of Plaintiff's fiftieth birthday. R. 17. On December 11, 2008, DDS consultant Leopold Moreno, M.D. ("Moreno") affirmed Cole's decision and findings. R. 227.

Plaintiff's administrative hearing was held on January 5, 2010. Plaintiff testified that, since the date of the alleged disability, she has been dealing with constant numbness and pain in her legs. R. 39. At this hearing, vocational expert Robert Edwards ("Edwards") testified that Plaintiff's profile (factoring in her age, education level, and work background) would not support working in any of her past jobs. R. 42. Edwards indicated that Plaintiff's profile could support sedentary, unskilled work, but that full time work at any exertional level would not be possible. R. 42.

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2011); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere

scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. Perales, 402 U.S. at 390; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980)). The Commissioner has the duty to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 497, 599 (4th Cir. 1979)). While it is not "within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence," (Id.) the Court must nevertheless carefully scrutinize the entire record to assure both that there is a firm foundation for the Commissioner's findings and that his conclusion is rational. Viteck v. Finch, 438 F.2d 1157, 1157-58 (4th Cir. 1971). Therefore, where the Commissioner fails to develop an accurate and logical nexus between the evidence in the record and the result, meaningful review cannot be accomplished. See Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003); Young v. Astrue, 771 F. Supp. 2d 610, 619 (S.D.W. Va. 2011).

## III. ANALYSIS

To qualify for a period of disability and DIB under section 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for DIB and a period of disability, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the inability to do any substantial gainful activity, by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a) (2011); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A) (2011). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.

In evaluating disability claims, the regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents her from past relevant work, and (5) has an impairment that prevents her from any substantial gainful employment. An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability. This analysis is set forth in 20 C.F.R.

§ 404.1520.

In this case, the ALJ found the following regarding Plaintiff's conditions. First, Plaintiff did not engage in substantial gainful activity between September 15, 2006, the alleged onset date of disability, and September 30, 2008, her DLI. R. 17. Second, Plaintiff suffered from the following severe impairments between the alleged onset date and the DLI: back disorder, bilateral knee disorder, diabetes, and obesity. Id. Third, Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 through the DLI. Id. Although severe, the ALJ found that Plaintiff's impairments are not attended with the specific clinical signs and diagnostic findings required to meet the requirements set forth in the Code. Id. Fourth, through the DLI, Plaintiff was unable to perform any past relevant work due to her impairments. R. 21.

Fifth, the ALJ found that Plaintiff has the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), except that such work must allow her to sit and stand as necessary, require no more than occasional postural activity, and involve no working at unprotected heights or around dangerous machinery. R. 18. This conclusion was made based on Plaintiff's allegations of the intensity, persistence, and limiting effects of her symptoms, as well as the medical opinions and evidence provided by Plaintiff's treating physicians. R. 18-19. While the ALJ found that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the effects of these symptoms were not credible, as they were inconsistent with the RFC assessment. R. 19. In making this finding, the ALJ considered Plaintiff's RFC, age, education, work experience, and the vocational expert's testimony and determined Plaintiff could make a vocational adjustment to jobs that existed in significant

numbers in the national economy, including the representative occupations of information clerk, gate guard, and office clerk. R. 22. The ALJ stated that, as directed by medical-vocational guidelines, 20 C.F.R., Pt. 404, Subpt. P, Apps. 1-2 ("the Grid Rules"), the Plaintiff was therefore not disabled within the meaning of the Act through September 30, 2008, her date last insured. R. 22-23.

In her Motion for Summary Judgment, Plaintiff attacks the ALJ's fifth finding, alleging that the ALJ erred by not considering a non-mechanical application of the Grid Rules in this borderline age situation case, as she was only three months and twenty-four days shy of her fiftieth birthday on her DLI for disability benefits. Pl.'s Mem. in Supp. of Mot. Summ. J. 4. For this reason, she asks for a reversal or a remand of the ALJ's decision, claiming it is not supported by substantial evidence. Id. Defendant argues that the decision should be affirmed because the ALJ adequately considered Plaintiff's borderline age in accordance with the federal regulations, and insists that regulations do not require an ALJ to explain in a written decision why an older age category was not used. Def.'s Mem. in Supp. of Mot. Summ. J. 7, 9.

This Court considered each argument, and recommends that the Commissioner's decision is not supported by substantial evidence due to a failure to show Plaintiff's borderline age was considered, signified by a lack of any explanation as to why he used her chronological age instead of placing her in the next higher category. Therefore, this Court recommends the decision should be reversed and remanded to consider the borderline age issue.

The Grid Rules take into consideration a plaintiff's physical abilities, age, education, and work experience, and direct a finding of disability or lack of disability, depending on a combination of these factors. C.F.R. Pt. 404, Subpt. P, App. 2. Specifically, Plaintiff points to 20

11

C.F.R. § 404.1563, which breaks age into four categories: "(1) close to retirement age (60-64); (2) advanced age (55-59); (3) approaching advanced age (50-54); and (4) younger individual (18-49)." Where someone is on the border of a higher age category, these categories are not to be mechanically applied. 20 C.F.R. § 404.1563(b); Gory v. Schweiker, 712 F.2d 929, 930-31 (4th Cir. 1983). That is, if one is "within a few days of reaching an older age category, and using the older category would result in a determination that [one] is disabled, [the Commissioner] will consider whether to use the older category after evaluating the overall impact of all the factors of [an individual's] case." Id. Plaintiff then points to Grid Rule 201.14, 20 CFR Pt. 404, Subpt. P, App. 2, which states that, for an individual in the 50-54 category who (1) has no more than a high school education, (2) is precluded from her past relevant work, and (3) is now capable of no more than sedentary exertional work must be found disabled. Pl.'s Mem. in Supp. of Summ. J. 5.

With respect to the application of the Grid Rules in borderline age situations, the Appeals Council Interpretations provide the following:

> To identify borderline age situations when making disability determinations, adjudicators will apply a two-part test:
>> (1) determine whether the claimant's age is within a few days or a few months of a higher age category.
>> (2) If so, determine whether using the higher age category would result in a finding of "disabled" instead of "not disabled."
>
> If the answer to both questions is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age of the claimant's chronological age.

See, e.g., Brown v. Astrue, 2009 WL 890116, No. 3:07-2914-SB, at *12 (D.S.C. Mar. 30, 2009) (citing Appeals Council Interpretation II-5-3-2). Had Plaintiff been just three months and twenty-

four days older on her DLI,[2] affirmative answers to both of these Appeals Council Interpretation inquiries would have been given. That is, it had been established that Plaintiff had no more than a high school education, was precluded from any past relevant work, and was capable of no more than sedentary work. Therefore, had she been fifty years of age, as opposed to just shy of it, Grid Rule 201.14 would have dictated a finding of disabled. Grid Rule 201.14, 20 CFR Pt. 404, Subpt. P, App. 2.

In borderline situations, an ALJ must "decide whether it is more appropriate to use the higher category or the claimant's chronological age." Brown, 2009 WL 890116, at *12. Such an analysis is wholly absent from the record. While the ALJ does refer generally to the Medical-Vocational Guidelines, he applied her chronological age without explaining *why* he chose to do so, despite the fact that both the Appeals Council Interpretations and the Code of Federal Regulations require such an explanation. 20 C.F.R. 404.1563(b); Appeals Council Interpretation II-5-3-2. Defendant argues that the ALJ's consultation of a vocational expert, who considered Plaintiff's age in concluding that Plaintiff's profile could support sedentary, unskilled labor, presumptively shows that the ALJ engaged in a non-mechanical application of the Grid Rules, in compliance with 20 C.F.R. § 404.1563(b). The Court rejects this argument, as the "mere fact that the ALJ consulted a vocational expert . . . does not automatically prove that the ALJ did not apply the Grid mechanically regarding Plaintiff's age category . . . . The ALJ must, at a minimum, acknowledge that he considered the borderline-age issue non-mechanically, and doing so likely requires some explanation, however brief, of the conclusion he reached. *Anything less makes judicial review impossible*." Anderson v. Astrue, 2011 U.S. Dist. LEXIS 62862, at *41-42

---

[2] Plaintiff's date of birth is January 23, 1959. Pl.'s Mem. in Supp. of Summ. J. 3.

(N.D. Ill. June 13, 2011) (emphasis added); see also Brown, 2009 WL 890116, at *12 (remanding a Commissioner's decision for further development of the record where consideration of a borderline age is absent).

Decisions coming from the Fourth Circuit, with factual situations similar to the instant case, lend ample support to the requirement of this analysis. For example, in Ford v. Heckler, 572 F. Supp. 992 (E.D.N.C. 1983), the court remanded a case because of the ALJ's failure to consider that a plaintiff was three months away from the next age group on the grid at the time of denial. Ford, 572 F. Supp. at 994. The Ford court found the mechanical application "troublesome" based on both the plaintiff's close proximity and other grid factors and remanded the case for a non-mechanical analysis. Id. Applying Ford's reasoning, the court in France v. Apfel, 87 F. Supp. 2d 484 (D. Md. 2000), granted a plaintiff's motion for summary judgment where an ALJ strictly applied an age category to the plaintiff. France, 87 F. Supp. 2d at 492. Just five months shy of a higher age category when the ALJ issued a denial decision, the France court found the ALJ erred in not sufficiently addressing the borderline age situation, emphasizing that the plaintiff would have been conclusively found to be disabled had she been in the other age bracket.[3] Id.

As in Ford, Plaintiff was merely three months shy of the next age group on her date of last insured, and merely a month away from that age group when the ALJ denied her claim on

---

[3] Moreover, other circuits have remanded mechanical applications of the age categories in similar borderline age situations for more individualized determinations. See Kane v. Heckler, 776 F.2d 1130, 1134-35 (3rd Cir. 1985) (remanding where a plaintiff's insured status expired forty-eight days before he would have been placed in the next age category); Chester v. Heckler, 610 F. Supp. 533, 534-35 (S.D. Fla. 1985) (remanding a denial decision where a plaintiff's fiftieth birthday was 30 days after the expiration of an insured status); Hilliard v. Schweiker, 563 F. Supp. 99, 101-02 (D. Mont. 1983) (remanding Commissioner's decision where ALJ ruled eighty-eight days before the plaintiff's fifty-fifth birthday).

reconsideration in December 2008. Like the plaintiff in France, instant Plaintiff would certainly have been disabled according to the Grid Rules had she been just months older. Accordingly, Plaintiff presents a very clear borderline situation. The ALJ mechanically applied the grid without any explanation, and such an application is therefore not supported by substantial evidence. Therefore, this Court recommends that final decision of the Commissioner be REVERSED and REMANDED so that the ALJ may consider the borderline age issue.

## IV. RECOMMENDATION

Based on the foregoing analysis, it is the recommendation of this court that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings consistent with this Report and Recommendation. Accordingly, the Court also recommends that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment be GRANTED in part.

## V. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this Report or

specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984), cert. denied, 474 U.S. 1019 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

                              _____/s/_____
                                     Tommy E. Miller
                             UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
March 26, 2012

## **CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Robert Wayne Gillikin, II
Rutter Mills LLP
160 W. Brambleton Ave.
Norfolk, VA 23510

Lawrence Richard Leonard
United States Attorney's Office
101 W. Main St., Suite 8000
Norfolk, VA 23510

                                          Fernando Galindo, Clerk

                    By _____
                                  Deputy Clerk
                                  March ____, 2012